THE GATE CITY NATIONAL BANK, *Appellee*, v.
F. G. THRALL, *Appellant.*

No. 17,187.

SYLLABUS BY THE COURT.

1. USURY—*Bona Fide Purchaser of Note Bearing Lawful Rate of Interest Not Chargeable with Usury.* One who buys at less than its face value a negotiable note bearing the highest legal rate of interest is not chargeable with usury because of the fact, of which he had no knowledge or notice, that the note was executed by the maker for the accommodation of the payee.

2. INDORSER—*Indorsement of Note by Payee—Not Borrowing Money.* The fact that the payee upon the sale of a negotiable note becomes by indorsement liable for its payment does not characterize the transaction as a loan to him.

Appeal from Greenwood district court. Opinion filed July 7, 1911. Affirmed.

*R. P. Kelley*, for the appellant.

*D. B. Fuller*, and *McCune, Harding, Brown & Murphy*, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Gate City National Bank obtained judgment against F. G. Thrall upon a promissory note executed by him and another maker to R. E. Bruner,

Bank v. Thrall.

and indorsed by the payee in blank. The defendant contested the claim, and now appeals, upon the ground that two notes, between the same parties, for $2500 each, in renewal of which that sued upon was given, were executed in Missouri and were tainted with usury under the law of that state.

Bruner, the payee, testified that the original notes were accommodation paper, executed to enable him to borrow money from the bank; that he conducted the negotiation with the bank's president, who knew this; that he was obliged to submit to a discount of five per cent, besides contracting to pay eight per cent interest, the highest legal rate.

The president of the bank testified, and the court, which tried the case without a jury, must be deemed to have accepted his version, to the effect that he bought the notes at a discount of five per cent and turned them over to the bank without any knowledge or notice of the want of consideration between the makers and the payee.

"In many jurisdictions it is held that although the purchaser of accommodation paper has no knowledge of the character of the paper, but acts under the belief that it is a *bona fide* existing obligation, the transaction is merely a loan, as the paper had in fact no validity until the purchase, and if the purchase is at a greater discount than the legal rate of interest the transaction is usurious, and the accommodating party may defend on the ground of usury. . . . In other jurisdictions, however, it is held that inasmuch as a usurious intent on the part of the lender is an essential element of usury, if the purchaser of accommodation paper at a greater discount than the legal rate of interest is without notice of its character, and under the *bona fide* belief that it is valid business paper, the transaction will not be deemed usurious." (29 A. & E. Encycl. of L. 477, 478.)

(See, also, Webb, Usury, § 166; 1 Page, Cont., § 477; 1 Daniel, Neg. Inst., 5th ed., § 752.)

We think it better accords with sound reason, and

with the general theory of the law of negotiable instruments, to hold that one who buys at a discount a note fair on its face, bearing the highest legal rate of interest, is not chargeable with usury because of a want of consideration between the original parties, of which he had no notice. This view is well presented and supported in *Holmes v. State Bank of Duluth,* 53 Minn. 350, and *Dickerman v. Day,* 31 Iowa, 444.

The fact that the payee, upon selling a note, indorses it and thereby becomes bound for its payment, has been held to characterize the transaction as a loan to him, but the usual and, as we think, better rule is to the contrary. (29 A. & E. Encycl. of L. 475.)

Complaint is made that the defendant was required to testify that he held collateral security from Bruner to protect him against loss on the notes. If this evidence was incompetent there is nothing to show that it affected the judgment. The defendant also contends that the court, by asking questions of the plaintiff's witness, the bank's president, put him on his guard and enabled him to frame his answers to fit his theory. There seems nothing substantial in the objection. The questions appear to have been intended to develop the actual facts.

The judgment is affirmed.